IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL DOWNEY                          *

      Plaintiff,                       *

v.                                      *        Civil Action No.: RDB 05-1962

BIBYS INSURANCE SERVICES                *
INC., *et al*.
                                        *
      Defendants.
                                        *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

MEMORANDUM OPINION

Pending before this Court is the Motion for Reconsideration filed by Defendants BIBYS

Insurance Services Inc. and P.J. Robb Variable Corp. ("Defendants").  The issues presented by

this motion have been fully briefed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md.

2004).  For the reasons stated below, Defendants' Motion for Reconsideration of this Court's

previous Order denying a stay of proceedings is GRANTED and proceedings in this case are

STAYED pending further order of this Court.

BACKGROUND

The facts of this case are described in the Memorandum Opinion issued by this Court on

November 4, 2005, and will not be repeated here.  *See* Mem. Opinion, 11/4/05, pp. 1-3.  In that

Opinion, this Court considered abstaining from exercising jurisdiction over this matter for two

reasons.  First, principles articulated in *Colorado River Water Conversation Dist. v. United

States*, 424 U.S. 800 (1976) and its progeny authorize abstention in the exceptional circumstance

where a federal case duplicates contemporaneous state proceedings and "[w]ise judicial

administration, giving regard to conservation of judicial resources and comprehensive

disposition of litigation" clearly favors abstention.  *Id.* at 817 (citations omitted).  Second, this

case is duplicated by an ongoing state proceeding brought by BIBYS Insurance Services Inc.

("BIBYS") against Michael Downey ("Downey" or "Plaintiff") in the New York State Supreme

Court, New York County (the "New York Action").  Accordingly, this Court considered:

> (1) whether the subject matter of the litigation involves property
> where the first court may assume *in rem* jurisdiction to the exclusion
> of others; (2) whether the federal forum is an inconvenient one; (3)
> the desirability of avoiding piecemeal litigation; (4) the relevant order
> in which the courts obtained jurisdiction and the progress achieved
> in each action; (5) whether state law or federal law provides the rule
> of decision on the merits; and (6) the adequacy of the state
> proceeding to protect the parties' rights.

*Id.* at 5 (citations omitted).  After weighing the above factors against the circumstances of this

case and the New York Action, this Court denied Defendants' Motion to Dismiss, or in the

Alternative, to Stay Proceedings.  *See* Order, 11/4/05.

On November 21, 2006, Defendants filed a Motion for Reconsideration to respectfully

request that this Court reconsider its prior Memorandum Opinion and Order.  The basis of

Defendants' motion is that this Court failed to consider Plaintiff's agreement to submit certain

claims to the exclusive jurisdiction of state and federal courts located in the State of New York.

Defendants contend that if this Court would have properly considered Plaintiff's agreement, it

would have dismissed or abstained from exercising jurisdiction over this matter.  (*See* Defs'

Mem. Supp. Recon. pp. 3-5.)

## STANDARD OF REVIEW

The Order at issue is not a final judgment under Federal Rules of Civil Procedure 59(e)

or 60(b).  Instead, it is an interlocutory order under Federal Rule of Civil Procedure 54(b).  As a

result, it "is subject to reconsideration at any time prior to entry of a final judgment."

*Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991); *see*

*also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge").  Although it is unclear what the precise legal standard is for reconsidering an interlocutory order under Rule 54(b), this Court is guided by the principles for reconsidering decisions that have become the law of the case.  *See, e.g.*, *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988) (decisions that have become law of the case must be followed unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.") (internal quotation marks omitted); *see also American Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (holding that a district court's broad discretion to reconsider interlocutory orders is narrowed in the context of motions to reconsider especially important issues such as subject matter jurisdiction).

## DISCUSSION

Since this Court prepared its Memorandum Opinion and Order, three developments have occurred that bear on whether this Court should abstain from exercising jurisdiction over this matter.  First, on November 3, 2005, Plaintiff filed an Answer and Counterclaims in the New York Action asserting that, *inter alia*, BIBYS owes Downey for unpaid commissions and wages under a series of agreements between Downey and his employers, BIBYS and P.J. Robb Variable Corp. ("Robb").  (*See* Paper No. 20, Ex. D.)  Second, on November 10, 2005, Plaintiff filed an Amended Complaint in this action that expanded Plaintiff's claims against Defendants to include claims for unpaid commissions and wages based on the same series of agreements.  (*See*, *e.g.*, Am. Compl. ¶ 17.)  Third, on November 21, 2006, Defendants filed a Motion for Reconsideration emphasizing the effect of a mandatory forum selection clause in one of the

agreements identified in Plaintiff's Amended Complaint and Answer and Counterclaims, *viz.*, the

Sales and Marketing Professionals Non-Solicitation, Non-Disclosure, Non-Use and Non-Hire

Agreement between Plaintiff and BIBYS dated December 22, 2003 ("2004 Employment

Agreement").

These developments are significant because they clearly invoke the forum selection

clause in the 2004 Employment Agreement.  That provision provides:

> This Agreement sets forth the entire agreement among the parties
> relating to Associate's employment by the Company, and shall be
> construed and interpreted in accordance with the laws of the State of
> New York and the state courts of the State of New York and United
> States District Court for the Southern District of New York, in each
> case located in the Borough of Manhattan, City of New York, shall
> have *exclusive jurisdiction* over the parties with respect to any
> dispute or controversy between them arising under or in connection
> with this Agreement.

(Paper No. 15, Martini Aff., Ex. 4 (emphasis added).)  The effect of this mandatory forum

selection clause is straightforward: Plaintiff agreed in advance to submit any claims that arise

under or are connected to the 2004 Employment Agreement only to state and federal courts

located in New York City.

It is well-established that mandatory forum selection clauses are *prima facie* valid and

enforceable.  As the United States Court of Appeals for the Fourth Circuit explained:

> In *The Bremen*, the Supreme Court found that forum selection clauses
> are presumptively valid and should be enforced unless the clause is
> "unreasonable and unjust, or that the clause [is] invalid for such
> reasons as fraud or overreaching."  407 U.S. at 15.  Moreover, the
> burden is on the party objecting to enforcement of the clause to make
> this showing.  *Id*. at 15.  While *The Bremen* is an admiralty case
> involving an international contract, this Court has applied its
> reasoning in diversity cases not involving international contracts.
> *Mercury Coal & Coke, Inc. v. Mannesmann Pipe and Steel Corp.*,
> 696 F.2d 315 (4th Cir.1982).  In *Mercury*, this Court upheld a forum
> selection clause in a contract between a West Virginia coal dealer and
> a New York coal dealer requiring all disputes to be litigated in the

4

Supreme Court of New York for the County of New York.

*Bryant Elec. Co., Inc. v. City of Fredericksburg*, 762 F.2d 1192, 1196 (4th Cir. 1982); *see also*

*Vulcan Chemical Tech's, Inc. v. Barker*, 297 F.3d 332, 339 (4th Cir. 2002) ("[A]bsent a showing

that the chosen forum is unreasonable or was imposed by fraud or unequal bargaining power, the

parties' choice should be enforced.") (citations omitted).

In this case, Plaintiff does not challenge the enforceability of the forum selection clause

in the 2004 Employment Agreement. Instead, Plaintiff argues that "several" of his claims "do

not implicate the specific contract that Defendants aver contains the forum selection clause."[1]

(Pl's Mem. Opp. Recon. p. 4.) Plaintiff is apparently referring to the fact that his claims for

unpaid commissions are arguably associated with at least two separate employment agreements.

One such agreement—the Point of Sale Agreement among BIBYS, Downey, and P.J. Robb

---

[1]      Plaintiff also argues that "Downey's employment relationship with Defendants was governed by a mishmash of employment agreements, all with conflicting choice of law provisions." (Pl's Mem. Opp. Recon. p. 4.) This argument, however, is not relevant to the application of the mandatory forum selection clause in the 2004 Employment Agreement. The choice of law provisions that govern *other* agreements—*e.g.*, promissory notes that Defendants allege Plaintiff failed to repay—have no bearing on whether Plaintiff's claims arising under or connected to the 2004 Employment Agreement are governed by its mandatory forum selection clause. For example, although the parties did not address the issue, if the other agreements and the 2004 Employment Agreement are part of the same transaction, then the mandatory forum selection clause in the 2004 Employment Agreement may govern claims arising under the other agreements. *See Straight-Out Promotions, LLC v. Warren*, No. 04-475, 2005 U.S. Dist. LEXIS 7276, *7-8 (W.D. Ky. Apr. 26, 2005) (unpublished) ("The court finds that the writings are integrated parts of a single transaction and must be read together. As such, there was an agreement to proceed to litigation on Straight-Out's claims only in the United Kingdom. To find otherwise would be to turn the forum selection clause on its ear.") (citations omitted). For different reasons, this Court rejects Plaintiff's argument that the forum selection clause in the 2004 Employment Agreement does not apply to his tort and Maryland Wage and Hour Statute claims. The relation between Plaintiff and Defendants is contractual, and it is well-established that alternative non-contractual theories of liability cannot be invoked to avoid a forum selection clause. *See*, *e.g.*, *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) ("Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action."); *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 949 (S.D.N.Y. 1994) (same).

Variable Corp. dated March 18, 2002 (the "2003 Employment Agreement")—is governed by New York law but does not contain a forum selection clause.  (*See* Paper No. 15, Martini Aff., Ex. 4.)  The other agreement—the 2004 Employment Agreement—is governed by New York law and, as discussed above, contains a mandatory forum selection clause.

The forum selection clause in the 2004 Employment Agreement encompasses any claims asserted by Plaintiff against Defendants for unpaid commissions and wages that Plaintiff earned under the 2004 Employment Agreement.  Although absent from Plaintiff's initial complaint, Plaintiff's Amended Complaint appears to assert such claims.  For example, after specifically alleging that BIBYS owes Plaintiff for unpaid commissions earned under the 2003 Employment Agreement, Plaintiff makes the general allegation that "BISYS has similarly failed to pay Downey other commissions and wages due Downey."  (Am. Compl. ¶ 17.)  Plaintiff then contends that "BIBYS has acted in bad faith and deceptively by failing to pay Downey the commissions and wages to which he is entitled under the agreements between the parties."  (*Id.* at ¶ 18.)  One of the agreements identified in the Amended Complaint is the 2004 Employment Agreement.[2]  (*Id.* at ¶ 13.)  Finally, Plaintiff's opposition to Defendants' Motion for Reconsideration appears to concede that the forum selection clause in the 2004 Employment Agreement governs at least some of Plaintiff's claims before this Court.[3]

---

[2]      Each cause of action asserted in Plaintiff's Amended Complaint relies on the allegation that Defendants failed to pay  Downey commissions and wages under specific agreements, including the 2004 Employment Agreement.  (*See* Am. Compl., ¶ 28 (Count II; breach of contract); ¶ 34 (Count III; unjust enrichment); ¶ 42 (Count IV; breach of implied covenant of good faith and fair dealing); ¶ 47 (Count V; violation of NY Labor Law §§ 190 *et seq.*); ¶ 51 (Count VI; promissory estoppel); ¶ 55 (Count VII; quantum meruit); ¶ 60 (Count VIII; violation of Maryland Wage Payment Statute).)

[3]      Specifically, Plaintiff states that:

[S]everal of Downey's claims pending before this Court, which

These unique circumstances—which had not transpired when this Court issued its prior Memorandum Opinion and Order—have convinced this Court to reconsider whether to abstain from exercising jurisdiction over this matter.[4]  The principles set forth in *Colorado River* and its progeny authorize abstention in the exceptional circumstance where a federal case duplicates contemporaneous state proceedings and "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" clearly favors abstention.  *Colorado River*, 424 U.S. at 817 (citations omitted).  In its prior Memorandum Opinion, after noting the parties' agreement that this action and the New York Action are parallel in nature, this Court explained that:

> The following specific factors are to be considered: (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

---

> sound in tort and the Maryland Wage and Hour Statute, do not implicate the specific contract that Defendants aver contains the forum selection clause.  In any event, Downey's employment relationship with Defendants was governed by a mishmash of employment agreements, all with conflicting choice of law provisions.  And, although the sole contract Defendants cite in the Motion for Reconsideration contains a forum selection clause with New York as the litigation forum, many of the agreements at issue in this matter are governed by Maryland law or New Jersey law. . .

(Pl's Mem. Opp. Recon. p. 4.)

[4]      The only agreement referenced in Plaintiff's initial complaint is the 2003 Employment Agreement.  (*See* Compl. ¶ 4 ("on or about March 18, 2003, Plaintiff entered into a contract with the Defendants whereby Plaintiff agreed to act as an insurance sales agent on behalf of the Defendants"); ¶ 8 ("Plaintiff is owed commissions for the months of October, November, December of 2003 for insurance policies that he sold on behalf of the Defendants.").)

Memorandum Opinion, 11/4/05, pp. 4-5 (citations omitted).  The above factors are not used as a

"mechanical checklist," but are instead weighed according to the circumstances of the case "with

the balance heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone Mem.*

*Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983).

    The developments that have transpired since this Court issued its Memorandum Opinion

and Order significantly impact at least three of the six *Colorado River* factors.  Under the first

factor, state and federal courts located in New York have exclusive jurisdiction over certain

claims in this action pursuant to the mandatory forum selection clause in the 2004 Employment

Agreement.  *Cf. Vulcan*, 297 F.3d at 341 (analyzing first *Colorado River* factor in terms of

exclusive jurisdiction even though no real property involved).  At a minimum, such claims

include the contract, tort, and statutory claims asserted in Plaintiff's Amended Complaint for

unpaid commissions and wages that Plaintiff earned under the 2004 Employment Agreement.

Although not addressed by the parties, Plaintiff's other claims may also be governed by the same

forum selection clause.  *See Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)

(discussing broad scope of forum selection clauses that employ phrases such as "in connection

with" or "arising from"); *Straight-Out Promotions*, 2005 U.S. Dist. LEXIS 7276 at *7-8 (holding

that where various contracts are integrated parts of a single transaction, a mandatory forum

selection clause contained in one of the contracts governs claims brought under other contracts);

*Bank Nationale De Paris v. Bahman*, No. 96-7444, 1997 WL 138944, *2, 1997 U.S. App.

LEXIS 5132, *5 (2d Cir. Mar. 18, 1997) (noting that "when a new agreement merely modified

an earlier agreement, any provisions of the earlier agreement that are consistent with the

modified version will survive") (unpublished).  Accordingly, because state and federal courts in

New York have exclusive jurisdiction over some, if not all, of the claims in this action, this

factor favors abstention.

Under the third factor, the threat of piecemeal litigation is significant if this Court continues to exercise jurisdiction.  First, the forum selection clause in the 2004 Employment Agreement requires that certain claims asserted by Plaintiff be submitted to the jurisdiction of state and federal courts located in New York.  Continuing federal jurisdiction in this district would therefore require that the parties look to two forums for resolution of this dispute. Second, this Court's concern about inconsistent and conflicting judgments is heightened in light of the parties' bargain to litigate certain claims in New York State.  For example, any determination that this Court might make regarding which of Plaintiff's claims, if any, are *not* subject to the forum selection clause in the 2004 Employment Agreement might be inconsistent with decisions that have already been made in the New York Action.[5]  Moreover, a number of issues that the parties did not address in this action may be relevant to any such determination. *Cf. Roby*, 996 F.2d at 1361; *Straight-Out Promotions*, 2005 U.S. Dist. LEXIS 7276 at *7-8; *Bank Nationale De Paris*, 1997 WL 138944 at *2, 1997 U.S. App. LEXIS 5132 at *5.  These considerations—*i.e.*, the forum selection clause in the 2004 Employment Agreement and the inefficiencies that will inevitably result if both this Court and the New York court address the scope and applicability of that clause—strongly favor abstention.

Under the fourth factor, it appears that the New York Action has progressed beyond this action in some respects.  In particular, the parties have apparently entered into a discovery

---

[5]      Judge Rolando T. Acosta, who is presiding over the New York Action, has interpreted the forum selection clause on at least two occasions.  On November 14, 2005, after considering the provision at issue, Judge Acosta found that "by signing the agreement, [Plaintiff] submitted to jurisdiction in New York."  (Paper No. 16, Ex. A.)  Similarly, on February 22, 2006, Judge Acosta found that "Downey voluntarily entered into the employment contract with plaintiff which evidenced the parties' intentions to litigate any controversies arising out of the contract in New York."  (Paper No. 27, Ex. A.)

schedule that has been endorsed by the court in the New York Action.  (*See* Defs' Reply Supp. Recon. pp. 3-4.)  In addition, the parties may have actually commenced discovery.  In contrast, this Court has not entered a scheduling order and discovery has not commenced.

This Court's analysis of the remaining *Colorado River* factors remains substantially the same as the analysis expressed in its prior Memorandum Opinion.  It is important to note, however, that "a factor-by-factor analysis does not fully convey the synergistic effect of all the circumstances."  *Vulcan*, 297 F.3d at 343.  In both this action and the New York Action, Downey decided to pursue claims under the 2004 Employment Agreement *after* the mandatory forum selection clause had been raised as an issue in this litigation.  Downey was fully aware, moreover, of the import of the forum selection clause.  He submitted an affidavit in the New York Action acknowledging that "*New York* courts shall have exclusive jurisdiction over the parties with respect to any dispute arising in connection with the [2004 Employment A]greement."  (Downey Aff. ¶ 10 (emphasis in original).)  Nevertheless, Downey attempted to avoid the requirements of the forum selection clause in both this action and the New York Action.  (*See*, *e.g.*,  Paper No. 27, Ex. A ("[D]efendant cannot enter into a valid contract and subsequently seek leave from the Court to breach the terms of the contract.").)  In at least this action, moreover, Downey did so without challenging the enforceability of the forum selection clause and without denying that at least some of his claims fall within its scope.  This conduct is significant in light of the fact that Downey's initial complaint in this action neither referenced nor appeared to assert claims for unpaid wages or commissions earned under the 2004 Employment Agreement.

In sum, after reconsidering the prior Memorandum Opinion and Order and taking into account the recent developments discussed above, this Court finds that this case presents the

exceptional circumstance where a federal case duplicates contemporaneous state proceedings and "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" favors abstention.  *Colorado River*, 424 U.S. at 817 (citations omitted).

<u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion for Reconsideration is GRANTED and and proceedings in this case are STAYED pending further order of this Court. A separate Order follows.

Dated: June 2, 2006                              /s/_____
                                                 Richard D. Bennett
                                                 United States District Judge